May it please the Court, my name is Paul Lesko and I represent Compression Technologies here and we're here for two reasons. We're asking that this Court reverse the District Court's findings that Claims 2-3 and 9-12 don't contain patentable subject matter under 35 U.S.C. 101 and also to reverse the finding that Claims 2-3 do not meet the limitations of 35 U.S.C. 112, paragraph 6. By now we've got some jurisprudence on 101 and we've got panel decisions, some of which affirmed or reversed, some which found patentable subject matter, some not. Since you want us to reverse Judge White, what is the case that you would opinion of ours that is closest to your case? I would say it's Research Corp. In Research Corp. that's the case that involves basically a gray scale on a computer monitor how colors turn out in modifying of gray scales. In essence, it's a patent that claims an invention that improves how computers work. It makes it easier for people to view screens of computers. That's what our invention is too. We aren't a process where we take, say, insurance forms or hedging risks and then add a computer. We're a process and an apparatus that are an improvement to computers. Mainly, our patent works in the area of data compression. Through the patent, we organize data in such a fashion that through a process, a later process called deduplication, you can make it smaller so that you have more room on hard drives and you can communicate more quickly with this data. We're not improving a process that's outside of the computer world just by tacking a computer onto it. We are actually improving computers themselves. That's why I think Research Corp. is the case that focuses best or is analogous best to what we have here. I'm just curious. Maybe this is a dangerous question to ask. This is really just for my own edification. What would you say is the point of novelty in Claim 9? The point of novelty of Claim 9 is going to involve... I mean, the most important one is the context-insensitive parsing and the application of that to... Where does it say that? It's going to be the parsing step, Your Honor. Parsing input packets into output packets? That's correct, Your Honor. That's context-insensitive? Correct. So what we do with context-insensitive parsing... It probably would have helped to explain what context-insensitive parsing is. Typically, the prior art was what's called context-sensitive parsing. I know you guys suffered through some DNA cases earlier, but a DNA example would help. The way DNA works is it looks at... It looks at what's called When you're replicating DNA, you look at three base pair chunks. If you insert an extra base pair, it's called a frame shift. Everything gets moved over. And if you're only looking at every three base pairs, that one insertion throws everything else off downstream. And that's what context-insensitive parsing does. You will look at, say, if we're talking about digital data, just every three bits. And if you insert an extra bit, it's going to throw everything off, and you're not going to be able to have matching packages afterwards. Now, context-insensitive parsing, which is what the claimant goes after, it will look at the actual contents of the data, so that when you have an insertion, sure, that packet where the insertion is is going to be thrown off. There's going to be a difference. But context-insensitive parsing allows a realignment later down, so it preserves the number of duplicate matches you have. And yet the claim 9 doesn't say anything about that. It just talks about translating data into some new form based on a characteristic. Now, this is where... Right? I mean, that's kind of what the claim calls for. Before claim construction. Claim construction was necessary here, because the spec is written for one of ordinary skill in the arts. Parsing is defined in the patent as context-insensitive parsing. And it's done that in its comparison to the prior art. The goals of the patent, there are three goals of the patent. I thought the district court, maybe Ron, accepted your claim construction arguments for purposes of deciding... The district court says it did, but in application it did not. Our claim construction limited it solely to computer data. So the court's holding for finding non-patentable subject matter was that the invention could take place in the human mind. That's not possible with our claim construction. Our claim construction, for at least three terms, information streams and input packets. That's how you start the invention off with. You have an information stream coming in, and the information stream consists of input packets. Under the invention, as one of ordinary skill in the art would look at the invention, would realize that input packets are data. We're talking about ones and zeros, or the digital data that a computer reads. That digital data, just at that moment, by being digital data confined to a computer, it can't take place in the human mind, because the human mind can't comprehend that. Then you get your context-insensitive parsing. The parsing would need to be construed to be context-insensitive parsing, and that's done at least by the contrast of the goals of the invention to say, we want to do something different than context-sensitive parsing. We're context-insensitive parsing. That is, and the claims say that there's two ways to do that. By looking at the contents of the packets, or the transition between the contents of the packets, which means if you look at, if you have one packet, just for example, is the word at, and another packet is the word the. If you're looking at the contents of the packet, you're looking at at, and you're looking at the. If you're looking at the transitions between the packets, you're looking at the two Ts, so you can have multiple different ways of carving it up. That's why, when you're looking at the invention, because you're looking at packets, or the transitions between packets, we're talking about computer analysis. Plus there's also an output that would be the output packets, which again is computer data. And this applies globally across the method claims and the application claims. The method claims have additional evidence that it takes place solely in a computer, and one of those is the input means. The input means is, as defined in the spec, is a physical line which goes into the processor. On that physical line is where the input packets travel. People don't have wires sticking out of their heads. Because you don't have wires sticking out of your heads, Claim 2, Claim 3, cannot take place in a human mind. So, to go around on the question, those are at least some of the limitations that say that, while the judge indicates that he applied a claim construction, in essence he did not because, had he utilized a claim construction, the invention could not take place in the human mind. The judge was required to use our claim construction under Ultramershal, which indicates where claim construction, if it's not performed, you have to adopt ours. And while the briefing goes quite a bit on both sides into where claim construction develops, I think that's more of a side issue. Does Ultramershal really explicitly say that? I just didn't recall that. Ultramershal. I know there's been some debate in our cases about whether or not it's an absolute requirement that you do claim construction beforehand. I thought we said no. It's not an absolute requirement, but in cases like this, where you have words like input packets, output packets, parsing, you're going to need to engage, this is a complex patent. It's written for one of ordinary skill in the art. It's not written for lawyers and judges. Given that context, you need to engage in claim construction. No, I'm just asking about Ultramershal because I don't remember the details. Ultramershal does not throw a line in the sand saying you need to do claim construction, but it heavily enforces it. It does. Well, he did claim construction. He construed it. I'm sorry? The judge construed it and made the decision. What do you mean by he didn't do claim construction? He didn't adopt our, well, he didn't perform claim construction in the context of letting both parties battle it out to get the correct construction. So under those contexts, then he has to adopt our constructions, and we've at least put forward partial constructions for these terms, which limit the terms input packet, output packet, information stream to using computer information or being computer information. And if it's computer information, it takes it out of the scope of being able to take place in the human mind. Now, if there's no further questions on the abstract, because I realize the case law on 112 paragraph 6 is a lot easier to grasp. Just last week, the Federal Circuit in El Commerce versus SAP, I think it's a case that's really analogous to what we have here. Our patent, there are two means that are at issue here, the parsing means and the classification means. The court found that we didn't recite sufficient structure for both of those. Now, I think we've done this in at least two methods. First, for the parsing means, and for the parsing means, the patent identifies a structure called the parser. It's identified in Figure 1, Figure 6, and in Columns 5, lines 32 through 44, and Columns 12, lines 30 through 37. Right there at that point, by identifying a structure, the burden should have shifted over to the defendants to apply under a clear and convincing evidence standard that a parser is not sufficient structure. And this is where I think El Commerce comes in. El Commerce says, in issues where you have complex technology, you're going to need testimony of one of ordinary skill in the art to indicate whether there is sufficient structure. The defendants here only came with attorney arguments. There is no evidence from one of ordinary skill in the art. So I think at a bare minimum level, once we have identified a parser, we're good and we've won. But going beyond that, adopting their arguments, we need to have an algorithm that was associated with that. Our patent goes into great detail describing the algorithm. Under a section for the parsing means called parsing rules, which stretches from Column 6, line 30, through Column 11, line 43, we go through great detail describing what algorithms would be performed by the structure. Again, at this point, the burden would shift to the defendants to come forward with testimony from one of ordinary skill in the art to say that that is not sufficient. They didn't. They rested solely on attorney argument. So therefore, I think under El Commerce, we win. And the same argument goes with the classification means. The packet classifier is a structure in Figures 1, Figure 6, and at the same, Column 5, line 32-44, and Column 12, line 32-37, that describes the packet classifier as the classification means. You're into your rebuttal time, so if you want to save some of your rebuttal, you want to come to a closure here. And also, the classification rules are also provided in the specification also if we need that extra step to an algorithm. So with that being said, I'd like to reserve the rest of my time for rebuttal. Thank you. Good afternoon, Your Honors. Clem Roberts from Dory Tongary on behalf of the respondents, Quantum, EMC, and NetApp. The claims of this patent ensued are directed to the idea of parsing input packets into output packets based upon their internal characteristics or differences in quantitative characteristics like size or volume. That is an abstract idea under every test for abstraction that both this Court and the Supreme Court has ever articulated. So what about ultra-mercial? Let's talk about ultra-mercial, Your Honor. Ultra-mercial was a 12b6 motion. This was a motion under Rule 56. So ultra-mercial first, insofar as your question about ultra-mercial is was the Court required to adopt their claim constructions, it was not because, as you asked, opposing counsel, ultra-mercial says very clearly that if you are a summary judgment motion, the Court can conduct claim construction on its own. And in fact, for example, in Bancorp, which is another case from this Court's precedence, finding a patent invalid under 101, the Court did, after a summary judgment motion, say we're not bound by the claim construction given by the district court and actually went through and did its own claim constructions in Bancorp before invalidating the patent. So if your question about ultra-mercial was is opposing counsel correct that the Court was bound by their claim constructions, the answer is absolutely not. So you're asking us to sort of do away with the context and sensitive parsing teachings in the spec and understanding the claims. I'm not at all, Your Honor. So first, the claim term parsing is given an electrographic definition. It's in column 8, line 30. Quote, the term parsing, as used herein, refers to the process of establishing boundaries between packets at level N plus 1 in an information stream containing packets at level N. That's an express lexicographic definition. It doesn't define parsing as context-sensitive or anything of the kind. Moreover, if- But I thought the judge below agreed to, for purposes of resolving the summary judgment question, to just adopt whatever proposed claim construction was presented by the patent office. He did, and he- And did that include context-sensitive parsing? No, he clarified, and this is quoted at length in the briefs, but he clarified to them on the record, and he said very explicitly, the only thing you're asking for is to construe these claims as being required to digital data or computer data. And they said, yes, Your Honor, that's right. And that is, for example, quoted in our reply brief. The red brief? Yes, in the red brief, Your Honor. And that's on page 14 of our reply brief. The court, quote, so you would- Mr. Alesko, that's correct. Question. So when you say the claim construction is necessary here, you are really only saying that it needs to be understood that this is limited to computers. That's correct. That's correct. Okay, got it. So they said, and by the way, parsing packet and digital income stream also- excuse me, packet and information stream also both have lexicographic definitions in the specification. The specification says about the term packet, quote, the term packet as used herein refers to any convenient grouping of information. That's what the specification says. That's at column one, line 49 through 50, and it does it again at column six, line 16 through 17. So there's nothing about the term packet that requires digital information. And the court, in its judgment, said, I have a lot of reservations about the idea that this is limited to digital data. But fine, I'll adopt it because I don't think it makes a difference here. And then the court relied on something called the Mental Steps Doctrine, right? The court went through a number of different- I mean, yes, the court went through a number of different- What are the limits on the Mental Steps Doctrine? I guess one could make an argument that almost anything performed on a computer in another context could be performed by a human using his or her mind. So what are the limits on the Mental Steps Doctrine since I'm assuming you're not taking the position that anything, everything conducted on a computer is ineligible subject matter. I'm not taking that position, Your Honor. And I would say that we don't have, either from this court or from the Supreme Court, a unified voice on exactly where the line between black and white ought to be drawn. But I think that that's not a burden in this case where we're so far to one side. This is far more abstract than many of the other cases that this court for Accenture, Accenture v. Guidewire, has found to be directed to unpatentable inventions. So I can't- I mean, we don't have a clear, single, unified machine or transformation test anymore. And so I can't give you that line. What I can give you is a set of cases that sketch out a variety of different places where the court's drawn the distinction across a variety of different applications. You have Bancorp, CyberSource, Fort Properties. You have a number of cases, Accenture v. Guidewire, where this court has said that claims are unpatently directed to abstract ideas. And you have a couple, such as ResearchCorp, which says, okay, if you have a very specific application or if you have complex computer programming, we're going to go in the other direction. Now, my learned opponent said that the claims here are restricted. Quote, our patent works in the area of data compression. But the actual specification is very clear that it is not limited to a particular application. Quote, the present invention applies to a variety of information processing applications and is not limited to compression applications. That's from column four of line 58. Quote, the present invention is generally applicable to a wide range of information processing applications in addition to information compression, and then gives examples of content verification, virus checking, comparing documents to one another. That's at column four, line 34. Similar things at column 14, line 21. Again, the patent does not try to limit this to a particular application. There's nothing in the word parsing that limits it to a particular application, and the spec is as clear as it could be that what we're talking about is a method of manipulating data that can be used in anything you want to use it in. And that's even if you limit it to digital data, which I don't think is properly the construction of the claims, because there's nothing in any of the words that would limit them to digital. In fact, the word digital only appears in the specification one time when it describes digital words in opposition to text strings as something that can be parsed. So the word digital is really only used one time, and it's not used to limit the specification or the claims. As the court found, even if you were to limit this to computer data or digital data, that doesn't imply the existence of a computer, because I can process digital ones and zeros in my head. We did this for the district court actually at the decision below, at the hearing below with a giant whiteboard with ones and zeros in ASCII-encoded text that spelled out good morning. And that's cited in the record, and it's in the transcript of the hearing, which was submitted with the appendix. Similarly, we gave the example of doing it with a telegraph operator. Certainly, that's processing ones and zeros. But more fundamentally, the Supreme Court has said that you can do digital computations in your head. That was in Gottschalk v. Benson, where the conversion of binary numbers from BCD to pure binary, the court said that could be done mentally. So it's, I think, extremely clear that even if this were limited to digital data, it wouldn't require a computer. And then you get to the question of whether, well, okay, let's assume even if we assume that it does require a computer, at that point, does it become patentable? And then again, I think the answer is no, because you have a wide variety of decisions, Benson, Bancorp, CyberSource, DealerTrack, Fort Properties, all of which say the addition of a computer merely to perform a set of steps that could otherwise be performed in the human mind or with pencil and paper doesn't render the claims patentable. And there's nothing about this to distinguish them from any of those cases. And what opposing counsel has done is it hasn't cited any of those cases and said, literally in the reply brief, this is a much simpler case. Research court controls. You don't have to consider the other cases. With all due respect, I disagree. I think the whole point of a 101 analysis is to look at the pattern of the cases and try to fit this one in within the decisions that this court has made. And there, it's very clear that this doesn't have a specific application. There's no complex computer programming called for in the claims. And so there's nothing, I think, whatsoever to push on. I think the district court pretty much cited all of our jurisprudence here, except I don't recall that he did cite Research Corporation. Am I right about that? No, I think that that's incorrect, Your Honor. I believe that the district court did, in fact, cite Research Corporation when he was distinguishing it and saying that it – so, for example, it's cited on page 5 of the district court's opinion, which is on page 5 of the record. I see. Okay. And they say, well, the district court didn't actually ever apply. He said he was going to limit this to digital data, but then he didn't do so. But he clearly did. Again, on that same page, the district court says, well, you know, they're saying that if it's limited to digital data, that it can't be performed in the human mind, and that's clearly incorrect. Now, sorry, page 7 of the record, where he starts talking about mental processes. This is line 21. Compression Technologies argues that if a finding of the patent is limited to digital data, to cite the issue because, quote, if digital data is required, the human mind cannot utilize or comprehend it. Close quote. This is simply not true. And then he goes on to cite the same passage from Gottschalk v. Benson, which I cited, which says the conversion of BCT to pure binary is a mental step, which can be done purely in the human mind. And he similarly cites Bancorp for, quote, interchangeability of certain mental processes in basic digital computation. I mean, of course digital data can be processed in the human mind. It's a creation of the human mind. We came up with digital encoding. It's something human beings invented. It wasn't something found in the world that we can't comprehend. We developed it, right? It is a human mental creation. That's what digital data is. If there are any other questions, I'd be happy to address them, but perhaps I should spend a couple minutes on the 112 paragraph 6 argument. So the 112 paragraph 6 argument, they make a couple of arguments. First, they say the limitations are not actually 112.6 or now 112.f. That argument is waived because they didn't make it below. And indeed, they made the contrary assertion in their brief at page 124 through 29. That's their briefing below in the appendix. Second, they said that their structure in the forms of figure 1 and 6 and the associated text at column 5 and column 12, that text says very clearly that the figures are functional diagrams. Figure 1 illustrates a, quote, functional block diagram of the structure of one aspect of the present invention. What about the algorithms? So two things about the algorithms. The most important is that that argument is waived. And the reason that argument is waived is because the district court found below that when they accused our products, they put in final infringement contentions under the local rules, and they pointed at a processor without any reference to an algorithm. And the court said, you don't get to, for infringement, on your infringement contentions, point to a processor and then turn around and say it's a processor plus an algorithm. And the court said that very explicitly. Under this court holding in Ibram S. 732f3rd 1376, the district court has very broad latitude to treat infringement contentions as being binding and to hold people to them. But doesn't Alcommerce still apply? Do you want to address that? Sure. Alcommerce doesn't apply for two reasons. First, in a situation where the district court has said, you said it's a general purpose processor, that that's the corresponding structure, and I find that not sufficient under Aristocrat, which is what happened here. Alcommerce doesn't come in. Because they said the corresponding structure was a general purpose computer, there's no expert testimony required to understand what a general purpose computer is. It's not a dispute of fact. There's no expert testimony required. It's a point of law that if the corresponding structure, which is what they pointed to in their infringement contentions and what the district court held them to, is a general purpose computer, that the claim is invalid for having inadequate corresponding structure. Second, the things that they pointed to when they point to things like these blocks that are explicitly labeled as functional block diagrams, I would point the court to NOAA systems. So NOAA system says explicitly that where you are talking about an algorithm, if that algorithm only relates to part of the claimed functionality, it's as if there is no corresponding structure at all and expert testimony is not required. So I don't think that the recent decision of this court, as I understand it, a panel decision can't overrule a prior panel decision. NOAA is still good law. And NOAA says very cleanly that if you only disclose an algorithm for part of a function, that that's not adequate. That's not sufficiently treated as if there's no algorithm and no expert testimony is required. And here there is no algorithm of any kind disclosed, for example, for the second portion of the claim of the parsing means. The parsing means is responsive to the classification means for parsing the input packets into output packets and for generating an indication of the boundaries. How is that indication generated? Is it a flag? Is it a set of three zeros? Do you write the things into separate memory space? What is the algorithm for doing that generation? How is that performed? There's nothing in any of the things that they've pointed to, even if this court were to consider them, for performing that function and therefore NOAA systems controls. Thank you. We've got a few minutes left, Mr. Lesko. Just to start with, to simply address the one-on-one issue about what the invention is supposed to be limited under our claim construction. I think the quote to the court on A237 through 238 says it best. The court asks, so when you say claim construction is necessary here, you are really only saying that it needs to be understood that this is limited to computers. And I responded, that's correct. That's correct. So we're not solely focused on digital information or focused on computers themselves. So I think it's an important distinction there. Also, when it comes to the definition of the word parsing and packet from specification. Again, it needs to be looked at from one of ordinary skill in the art. And that's why either claim construction was necessary so that both sides can fully brief the issue or ours needs to be adopted. So to the extent we're delving into what does parsing mean, what does any of the other terms mean in the specification, I think that's premature. Although we've gone through in detail in our reply brief outlining all the support. So if the court does want to engage in claim construction, I believe it does have a complete record in which it can do that. And then turning to the 112, unless there's any more issues on one-on-one, turning to the 112 paragraph six issues. Again, this is, you know, as Elkhammer states, when you have complex technologies, testimony of one of ordinary skill in the art is required. So turning to the questions that were raised here, we're only hearing attorney argument in response to it. Is a flag good enough? Well, flag is actually disclosed in the specification. We have no testimony from one of ordinary skill in the art if that is insufficient or not. We've met our burden. We pointed to the columns that describe the algorithms. The burden needs to shift. It's time for more than just attorney argument. You need facts at that point. So unless there isn't any further questions, I can rest. Case is submitted. We thank both counsel. That concludes the proceedings.